Good morning, and may it please the Court. Derek Milosavljevic on behalf of Appellant Cion Adonis Peralta. I'd like to reserve three minutes if I could. Mr. Peralta appeals final judgment from the District Court in favor of all three defendants in his 1983 claim for deliberate indifference to his serious medical needs. I'd like to speak to the first two defendants, Drs. Dillard and Fitter. With Drs. Dillard and Fitter, the District Court granted a 50-A motion for a directed verdict, and that was in error as there was sufficient evidence that a reasonable jury could have found in favor of Mr. Peralta. Let me ask you something as a practical matter. Assuming, don't give it away, assuming for the moment that the instruction to the jury was correct, as to the dentist, the jury comes back and says he did not violate any rights of the defendant, i.e., was not deliberately indifferent. The two supervisors, it looks an awful lot like if indeed because of resources and such there was no violation by the doctor dealing with him. The supervisors are all being attacked because they didn't intervene and change what the doctor dealing with them was doing. But if he didn't do anything wrong, then how in the world can they be liable? Well, I think that there are separate instances of deliberate indifference. And what Mr. Peralta alleged against Drs. Dillard and Fitter is not solely supervisory liability. He's alleging a direct violation against them in their handling of his medical complaints. And his complaints were the doctor on the scene isn't giving me proper care. He's being indifferent to my needs and isn't caring for me properly. That's his complaints. Let's assume they did nothing about them. We know now that the doctor on the scene wasn't being deliberately indifferent, wasn't doing anything wrong. So his complaints, so what? Well, again, I think that there are different complaints in that if that jury instruction was correct, and I don't think that it was.  Yes, Your Honor. If it was correct, then the jury could have found in favor of Dr. Fitter, the dentist, on the basis of his inability to do anything because of the shortages. However, it's a little bit different in the case of Drs. Dillard and Fitter, because this is more like the case in Redmond, in which even though the sheriff in that case was found to have not participated directly in the violation, he was held to have acquiesced in the overcrowding and the shortages. No, no. But the point is there was no violation. There's no violation. If they acquiesced in what he was doing, we know now that he wasn't doing anything wrong. Because there's – I'm sure you're not saying there's any evidence that they could have changed the financial situation involved. I mean, it was pretty clear across the board that none of these folks could do anything about the financial situation involved here. Well, I think it's certainly right that they may not have been able to get more funding for the prison or for the dental department. But I think that there's a difference if the jury decided in favor of Dr. Fitter based on his, at a lower level, just the dentist. Dr. Brooks, you mean. Brooks. I apologize. I apologize. Dr. Brooks was treated. They're saying Dr. Brooks did not – was not deliberately indifferent. That's right. My understanding is essentially what you're saying is this. If – the ground on which the district court ruled in favor of Drs. Fitter and Dillard wasn't because of financial resources. Right. And if those reasons were wrong, they were at least entitled to go to the jury on that question because the answer could have been different with respect to their – So the fact that Brooks was not liable if he wasn't liable because the financial resources doesn't answer the question. Is that basically where we are? That's right, Your Honor. I'm saying that if Dr. Brooks was not liable because of the resources, he could – the jury could have found that he had less ability to change what was done than did Dr. Dillard. And that question never went to the jury. That's right, Your Honor. Exactly. That's right. And so I think that the serious medical need prong has been established. Even the district court judge held that it was sufficient to go to the jury for Dr. Brooks on the serious dental need. And so the question becomes whether Drs. Dillard and Drs. Fitter were deliberately indifferent. And the district court held that there was no evidence that either one of them had any subjective knowledge of Mr. Peralta's conditions or the risk of serious harm. Suppose that was true. Would that answer the question? I know you're going to tell us why it isn't true. But suppose it was true. Would that be the end of the story? Or would the question be whether they had a knowledge of the systemic circumstances? It's similar to that, Your Honor. They didn't need to have subjective knowledge of risk of harm to Mr. Peralta individually. It's that they had to be aware subjectively of the risk of harm to someone in Mr. Peralta's position based on their inactions or their actions. And I think that was established in Gibson and as well as by the United States Supreme Court in Farmer v. Brennan. And so there are multiple ways to show that each one of these defendants, both Dillard and Fitter, had the subjective knowledge that is required by the case law. So, for example, with Dr. Dillard, he testified that the purpose of the complaint that Mr. Peralta filed, the 602, his second-level response, the purpose was to determine the appropriateness of the first-level response. And he testified that he was the only dentist on staff who had the expertise and was able to do so. But yet he also testified that on occasion he authorized others to do so. So, and as well, his name appears on that signature block. So these statements support an inference that Dillard either knew of Peralta's condition because he reviewed the records on his return, or that he knew of the risk to someone in Mr. Peralta's position that was faced by authorizing a non-dentist or an unqualified physician to sign this second-level system. But he also knew of the risk that because they were so terribly backed up that discreet decisions had to be made with regard to individuals as to who needed to be pushed to the front of this ridiculously long line and who didn't, that it wasn't even a medical judgment judgment exactly. It was a very complicated kind of medical judgment judgment, which he didn't make. Yes, Your Honor. This 602 form, it's been characterized a little bit by defendants as an administrative appeal. That's not what this is. Mr. Peralta made a request for help for medical care. And the only way to do this in his circumstance is through this 602 appeal. And the only people who have the expertise to understand whether he's getting treatment that he needs are doctors Dillard and Fitter. And so when they rubber-stamp these kind of requests, Mr. Peralta is put on the waiting list that his testimony reveals nine to 12 months long at that time in 2004 and 2005. Now, both of these people should be aware that the kind of symptoms that Mr. Peralta was complaining of were serious medical needs. And it had been established long ago in Hunt v. Dental Department in 1989 that needs, dental needs are sufficient to create an Eighth Amendment violation for deliberate indifference. I'd like to talk about Dr. Fitter for a moment. Dr. Fitter actually reviewed the 602 form, and he noted, and you can find the 602 form at Exhibit 11, he noted that Mr. Peralta repeatedly complained of serious pain. Now, Dr. Fitter was not a dentist, but he is a medical doctor. And so he should be sufficiently aware that pain is a sufficient condition to be a cause of serious harm. And McGuckin held that pain itself was enough to demonstrate the risk of serious harm. So Dr. Fitter, also the supervisor of the entire dental department, that includes Dr. Dillard, testified that he did review the 602. So he did see that Mr. Peralta complained of pain. He did see that the only treatment given for that pain was a three to four day supply of ibuprofen. And he also testified that typically his practice was to only sign off on these appeals after a dentist, typically Dr. Dillard, had signed off because he would rely on that chief dentist's opinion. Yet, in this case, he testified that he knew that Dr. Dillard had not signed off on it. And, in fact, the person who signed in Dr. Dillard's space was Dr. Kassim, who directly reported to Dr. Fitter. So there's sufficient... I'm sorry, Your Honor. Could you determine who needed faster care than other people? Pardon? Couldn't really determine who needed faster care than other people because they were really not looking at anything. Well, that may be... They said they were looking at the records, but they really weren't. That may be the case. And in defendant's response brief in this Court, they have said that the doctors, Dillard and Fitter, typically looked at 250 to 290 of these appeals a month. Now, that may be the case. I don't know that that's too many for them to take a look at it and review them. That's fewer than 10 a day, and it seems as though... Are you going to address the instruction? Yes. So the instruction with respect to Dr. Brooks, who was Mr. Peralta's treating physician, read, A doctor or dentist is not responsible for services which he or she could not render or cause to be rendered because the necessary personnel, financial, and other resources were not available to him or on which he or she could not reasonably obtain. First of all, are you aware of other cases in which this instruction has been given? I don't know. Yes. In, well, not this exact instruction and none in this circuit. However, this kind of instruction has been rejected in other circuits, and this kind of instruction was rejected by a district court in this circuit in Woodruff v. Oregon Department of Corrections in 2008. I'd like to remind the Court of this Court's very instruction in Jones v. Johnson that budgetary constraints do not justify cruel and unusual punishment, which, in fact, is the claim at issue in this case. And as Judge Fernandez wrote in his dissent in Redmond, the fact that overcrowding throughout our jail and prison systems is largely driven by economics should not make a difference. That kind of economics does not define our constitutional rights. And I think Judge Fernandez was wise in that dissent and prescient of what the law would later say in Jones v. Johnson and Brown v. Plata, in which the Supreme Court stated that California's prison overcrowding system is simply not an excuse for violation of constitutional rights. And that was the center. The problem here is who, at least officially, is whose problem is it, right? It's the state's problem in an injunctive case or an injunctive case against an ex parte young kind of a case. Here this is a damages case, and it's in form against, you know, somebody all the way down the line. Now, I assume, and I mean, I know that in general those damages are, in fact, not paid by the individual. But that's the way it's set up. And the question is, does that matter? I don't think it does, Your Honor. Dr. Brooks himself testified that when he examines a patient such as Peralta, who had claimed of severe pain and problems in many of his teeth, it was his policy to only ask which tooth hurt the most and then address that tooth. So are you saying, just I want to hear what you have to say, but I want to know whether your argument is that what that demonstrates is that he didn't do the best he could given the finances, which I guess would not be inconsistent with the instruction, or that the instruction shouldn't have been given? The instruction should not have been given. And I don't think that a rule such as suggested by appellees is going to encourage anyone in the prison system to uphold any prisoner's constitutional right. That means from now on, any, I hate to say low-level dentist, but a treating dentist or a treating physician can now say, well, I don't really have to do the kind of job that I really need to do. I don't have to consider the health and the risk of harm to this patient because I've been given license to consider the fact that this prison is overcrowded and that this State is strapped for finances. And so I think a rule that says, well, we will not consider the budget in terms of adjunctive relief, but when we're talking about damages, we're going to let physicians off the hook. I don't think such a rule would encourage the kind of treatment that upholds our prisoners' constitutional rights. And so I think that the instruction was clearly in error. And I mentioned a case in the Eleventh Circuit. It's Anderson v. Atlanta. And in that case, a rule similar to that proposed by appellees was rejected. In which case, I'm sorry? Anderson v. Atlanta, Eleventh Circuit, 1985. If the Court ---- Kagan, at all, that at least Jones and maybe Anderson was decided before Farmer? Anderson, oh, v. Atlanta? I know Jones was. I don't know about Anderson. Yeah. I don't think so. I'm not sure the relation between the whether a case was for a claim was brought up for adjunctive relief or for damages is important to whether it was decided before, was it Plata, Your Honor, or Farmer v. Brandon? Farmer is what I was trying to say. No, I don't think so, Your Honor. I think that Farmer, for the purposes of this case, clearly demonstrates that in addition to ---- I don't think so, Your Honor. I apologize. I lost my train of thought. I'd also like to point out that the error, if it was error, and we think it is, could not have been harmless. This jury instruction added an extra element. Essentially, this jury instruction required the jury to find that not only was Brooks deliberately indifferent, but he was not deliberately indifferent because of budget resources. So it specifically added that extra element. And this Court has said in Klemp v. Lomelli that an extra element is unlikely to be harmless, and in addition, prejudice is going to be presumed when nothing about the verdict indicates that it would have been the same without the error. All right. We are over time. We'll give you a minute in rebuttal. Thank you. If you have no further questions, I'm finished, Your Honor. Thank you. Counsel. Good morning, Your Honor. May it please the Court. My name is Janine Jeffrey, and I represent the appellees. I'd like to focus on the instruction because I think that governs the entire case. I think if the instruction is properly given, the verdict flows and the verdict flows and the directed verdict flows as to Dr. Dillard and Dr. Kemp. Well, that wasn't the basis for the directed verdict, and you could have had a different answer to the question even as the instruction was given with regard to these somewhat higher-up people, either as to their ability to affect the finances or as to their ability, the staffing or as to their ability to make decisions about how to work within the constraints. So it isn't clear to me that it does determine it, but start with the instruction anyway. Okay? I will. I think the instruction is a proper statement of law. It simply says if you don't have the means to fix it, you're not going to be liable. Do you have any case that has allowed such an instruction? No, I do not. And this, the way this instruction ended up before the jury is that the plaintiff submitted an instruction based upon an injunctive relief case that essentially said it doesn't matter what the budgetary constraints are, you can't talk about that, that's not important. And the judge revised their instruction. Well, what do you see it as? You see it as essentially a variety of a qualified immunity instruction? I see it as a means instruction. I think in order to be held liable under 1983, you have to have the means to do something. Well, how do we know that? If they're doing something that's they're doing it and it is unconstitutional, then why, unless it's some kind of an immunity theory. Why aren't they responsible for it? I understand that they couldn't do anything about the staffing, but they're still doing it. I mean, they're still the person who's putting him at the end of a year-long list with a toothache. Now, I understand there's a lot of fight about the facts, but given this instruction and given the likelihood that it drove the verdict, I don't think we can assume anything about what the jury found as to facts. We'd have to go back and have another trial without the instruction. So leaving aside all those arguments about he really didn't have a problem and so on, the list was, you know, a year long, and the question is if I'm a doctor, a dentist, and somebody is coming in to me, and I know he's in pain, but I have other people in pain and all I can do is put him, you know, in this instance I guess they saw him in five months for a possible extraction of a painful tooth. It turned out that didn't happen, but that's what they thought they were doing. So I'm doing it. I am doing it. Now, I may be doing it because I'm terribly understaffed and there's no way I can see him sooner, but I am doing it. So tell me why that isn't a form of a qualified immunity defense. I guess because I see qualified immunity as a little different, so I'm not understanding how that works. Well, then what is it? If it isn't qualified, if it isn't an immunity defense, then what is it? It's an inability defense. It's an impossibility defense. If I'm a treating physician and I'm in a prison and I say, you, this inmate needs pain medication, and there's no pain medication in the prison. Suppose I'm a line guard and my supervisor tells me, you know, beat people up every day or else you're going to get fired. All right. But the answer is that the guard has a choice of getting fired or beating people up, but he's still responsible for beating people up if he does it, right? Absolutely. So are we saying that our staff physicians have to choose between doing the best they can under the circumstances or quitting and putting the system in complete disarray? Maybe that's what we're saying. But that would be so patently unfair to the individuals working within the system. And the Court said, well, the staff physician has a choice. Well, it's not so fair to the guy who said the guard is being told he has to beat people up or be fired. Well, our case of Leard does talk about you have to have the ability to do it. You have to have the resources to do it. Eleventh Circuit case of Williams says the same thing. And that's all this instruction says. Does it not? I mean, you just said there were no cases that support that. Well, that instructed the jury, and I apologize for that. I understood the question to be, do you have an actual instruction to a jury? Even Jones, that's relied upon by the plaintiff, it was an injunctive relief and a damages case. It was a motion to dismiss. There was no argument made in that case that I can gather that the line dentist had or that the line doctor had a choice in giving the surgery. So Jones is not helpful, I think. And in any other case. I'm not understanding why it's not helpful. Well, because the issue wasn't even briefed. The court combined injunctive relief and damages. Have you looked at the brief? What issue wasn't briefed as to whether there's a difference between injunction and damages for this purpose? I don't think that. Well, as far as I can tell from the decision, I'm not sure that was briefed. But what I was saying was not briefed was the issue of whether an individual treating dentist, doctor in that case, as I understand it, he was going to recommend surgery. He said, you're not going to get it. It's elective. Well, we don't know from that case whether that doctor was saying, went to his supervisor and said, we need to do this surgery, or whether he erroneously called it elective surgery. We don't know that. There's no argument in that case from what I can tell where anyone put before the court, this is a treating doctor who's following the instructions of the people above him. In Redmond, this very issue came up. The court let go of several defendants when it stated, look, these guys didn't have any control. They were doing what they were told. They were implementing the policies as they were told to implement them. That's what it said. Well, Jones does directly address the question that you say it didn't address. It says, We find no other explanation in the record than the budget concerns for denying Jones's surgery. Budgetary constraints, however, do not justify cruel and unusual punishment. But there's no individual analysis as to each of the defendants. I agree that the upper-level defendants made a blanket rule. Nobody's going to have this kind of surgery. And I understand that decision. But what's not discussed in there is the individual dentist or doctor. And that, I think, is a problem. I don't think that gives us enough guidance. Because when you're dealing with an individual treater, the evidence before the jury was he's seeing so many patients and he's doing so many things. And he doesn't always have an assistant. And he never has a hygienist. And he's got all this stuff going on. And they've got to make decisions about who gets treated and when. And the jury, I think, has to take into account the context. The bottom line as a result is that there is no availability of any monetary recompense for anybody who is treated this way, no matter how badly, as long as California chooses to provide terrible medical care. I don't think that's true. I think, I mean, maybe I'm misunderstanding the question, but the jury was also instructed that individually they were instructed that how to show deliberate disregard. So if he was in the chair and Dr. Brooks didn't do what he was supposed to do, as counsel suggested, the jury could have said under instruction number 20 that he was, in fact, deliberately indifferent. First of all, even as to that, the reason he was seeing him for five minutes is because he only had five minutes. And it may be that he was in the chair, but there was no time to treat him. But second of all, I still don't understand. The real question here is wait times. And I understand this is just about dentistry. But the theory isn't just about dentistry. The theory, I mean, we have the overall medical situation in California, which we know from the Brown case. And I gather under your theory that none of the people who, that not none, but if somebody, you know, was having a heart attack and nobody showed up because there was no staffing, or the person who showed up showed up two hours late, that would not be, there would be no recompense at all. Under constitutional law, I guess you have to tell me more facts. Is the person just, they're out someplace else in the prison yard dealing with another prisoner and they don't get the call? Deliberate indifferences. I subjectively know of the problem and I disregard it. Well, I subjectively know you're having a heart attack, but I'm busy with somebody else because there's not enough staffing. And that other person is equally important and I've triaged them in my best medical opinion? Yes, there's no liability. These are individuals, and we're talking about the Eighth Amendment. We're talking about their culpable state of mind. How can you be culpable if there's not enough hours in the day to do your job and you're doing the best you can? And that was the evidence that was presented to the jury. And the jury said, yes, that's right. They had no problem with that concept. So the problem I have with what's going on is to suggest that an individual dentist should be liable because he's working as hard as he can work and he's doing everything he has to do. And this guy doesn't get treatment as fast as we would like. Let me just then admit that your position is and may be right. If the State of California decides to hire one doctor for 10,000 prisoners, then that doctor is not going to be able to give any of them very good medical care. That's not his problem if he's there doing the best he can. And the instruction says the lack of resources has to be what caused him not to do it, not his laziness, not his sleepiness, not because he was hanging out doing something else. The instruction, if I recall correctly, said the lack of resources has to be the reason that he wasn't able to do it. He didn't do it. So if California wants to run a system where it has one doctor for every 10,000 patients, maybe the doctor isn't liable. What's wrong with that? There's nothing wrong with that decision. Well, you seem to avoid saying that was true. Oh, no, I wouldn't mean to avoid that. I think that's exactly right. I think at that point maybe you've got the wrong defendant in the case, and maybe you should be suing the person who's made the budget decision that they're only going to provide one dentist. Let's say there's no person. Let's say it's the State of California's legislature passes that kind of statute. That doesn't mean that we can't step in and say something about that or do something about that and stop it, but let's say that's what the statute says. The statute says to save money, there can only be one doctor for every 10,000 prisoners. The end. That's the standard. Nobody to sue for damages that I can see, but that's because a State can do all kinds of terrible things and you can't sue them for damages in federal court. Isn't that true? I take it the State of California can do all kinds of awful things to me, and I can't sue the State for damages if I recall the ‑‑ That's correct. So ‑‑ Under the ‑‑ If that's your position, why not just bite the bullet and say it? But that leaves the problem of this individual man who's doing the best he can. If damages get awarded against him, there's also the specter of punitive damages. And while the State may well, in fact, pick up the nonpunitive damages, they will not pick up the punitive damages. So the jury would have to find that there was culpable conduct. And again, it goes back to this issue of are you culpable if you're doing the best you can, but you have incredibly limited resources? And that's the problem. And a jury instruction encapsulates that concept. It says you need to consider this in context. And then it says, and if you can't do it because you don't have the resources, then you're not going to be liable under the Eighth Amendment. I think that's the crux of the instruction. I think it's a fair statement of the law. And I think it's a fair result to the individual dentists and doctors who are on the line. Again, there's no evidence that he wasn't doing the best that he could under the circumstances. I don't know if the Court wants to move on to Dr. Dillard and Dr. Fitter. Kagan. Why don't you briefly do that? My question, main question as to them is this. Let's assume for the moment that they were not aware of the individual, Peralta's individual circumstances. Is that the end of the story? I believe it is. I believe under the faction laws. Suppose they knew that, which they did know, or at least might have known, that some substantial number of people with serious, with excruciating dental pain were not being seen for weeks or months because of their problems. And maybe they also, to deal with the other problem, either, I mean, I gather you were essentially saying that if so, it should have at least gone to the jury even under the instruction. In other words, I don't know how the instruction would come out at that point with regard to these people because they may have had different means of dealing with the triaging or they may have been, had some, I don't know. So leaving aside the instruction, could they, if they had reason to know that there were the way things were set up, there were a substantial number of people not being seen for serious and painful medical, dental problems in a timely manner. Would that be good enough? But they didn't know particularly that it was Mr. Peralta, but they knew that there were people. Again, I guess it's the same problem. The evidence that we put in front of the jury was they, too, Well, I understand that, but that wasn't the ground. This is why I said let's put that aside for now because they didn't get to the jury in that question. And the district court did not go off on that problem with regard to why he granted the Rule 50 to them. He seemed to me to grant it on the ground that they did not know particularly about Mr. Peralta. And I'm asking was that good enough? I believe it was. With respect to Dr. Dillard, I'd like to point out a specific comment which was made by Mr. Peralta's trial counselor in response to the question of whether or not Dr. Dillard had knowledge. And he specifically said, I can't point to anything in the record, I will concede, that says that Dr. Dillard knew Peralta had a serious medical condition. At that point, as to Dr. Dillard, I think game is over. All right. So your position is if he didn't know about Peralta in particular, the fact that he knew that people in his position were, because of the way the system was being run, were likely, were having untreated dental problems as Peralta said he was, isn't good enough? Correct. Okay. I just want to say what your position was. That's my position. As to Dr. Fitter, the whole case of plaintiffs regarding his knowledge is based upon his signing of the 602. That's what he did. That's all he did in this case. There was a first level review. It was signed by two dentists. It acknowledged that the inmate needed medical care, that he needed, that he was going to have an extraction, that he was given ibuprofen, and that he was going to be scheduled for the extraction. Yeah, for five months later. I mean, that seems to me to be quite bizarre. I mean, not bizarre, but I mean, I don't understand what sort of, even if you're triaging, if somebody says, now it may have turned out not to be true, but if somebody says that this tooth really hurts them and the doctor concludes that it should be extracted, at least my personal experience is, you can't live with that pain for five months if it's really the kind of pain that leads to a tooth having to be extracted. I think the timing is incorrect, although I'd have to check. He saw them in October and scheduled them in January. So October, November, December, January, three months. Okay. Okay. And Dr. Fitter signed the appeal, I believe, in January. So he said, you're on schedule to be seen, but it's a 602 appeal. So what they're doing now is elevating the 602 appeal to some inherent right that somebody in particular should review it. What we're doing is, as I understand the plaintiff's argument, is because it wasn't reviewed at the second level by the chief dental officer and Dr. Fitter didn't insist that the chief dental officer review it at the second level, then somehow we have an independent constitutional violation. I think the law is clear that that is not an independent constitutional violation, that there's nothing in the law that states you have to have any particular type of process. So what we have with Dr. Fitter is a medical doctor looking at an appeal signed by two dentists who he testified he knew to be competent and he relied on them. And that's the qualified immunity argument. I think he's entitled to do that. Okay. Thank you very much. Thank you for your argument. I don't remember where we left you off, but I'll give you one minute in a row, but I'll go ahead. Just a moment briefly to speak about Drs. Dillard and Fitter. If, as Pelley suggests, that Dr. Brooks should be shielded because of the finances and if that jury instruction is held to be permissible, it's important to note that under Redmond, Drs. Dillard and Dr. Fitter still have an independent obligation. In Redmond, the sheriff was held liable because he was deliberately indifferent because he was aware of the overcrowding and he acquiesced. So the burden on someone like a chief medical officer and a chief dental officer is much higher than someone like a treating physician or treating dentist like Dr. Brooks. I'd also like to point out that opposing counsel discussed that trial counsel said he could not point to anything in the evidence that suggested that Dr. Dillard was aware of Mr. Peralta's condition. I would direct the Court to that trial transcript and note that counsel, co-counsel for Mr. Peralta attempted to get up and direct the Court to someplace in the record where that evidence did exist. Opposing counsel objected that it was not fair and the Court in this oral 50A motion did not permit a full and fair description of the evidence there. I'd also finally like to point out that Dr. Fitter and Dr. Fitter did not just sign the Second Level 602 response. That is not just a form. It was drafted. And if the Court takes a look at that, it was drafted. So if the Court takes a look at tab 14 in the excerpts of record, you'll see that this is a drafted document. It wasn't just a sign-off on a form. It was Drs. Fitter and Dillard or someone signing in Dr. Dillard's place stating that everything was fine, he had been seen, there was no problem. So it wasn't just a sign-off. This was a form that was drafted by someone, and the jury should have been permitted to infer that it was drafted, in fact, by Dr. Fitter. Okay. Thank you very much.  Thank you, counsel, for your arguments in Peralta v. Dillard.
judges: Hernandez, Fernandez, Berzon